UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSEPH A. VOLKER,

                Plaintiff,

      -against-

COUNTY OF NASSAU, NASSAU COUNTY
SHERIFF'S DEPARTMENT, ACTING SHERIFF
MICHAEL A. SPOSATO, in his official and
individual capacity, DEPUTY COUNTY
ATTORNEY and GENERAL COUNSEL
ELIZABETH LOCONSOLO, in her official and
individual capacity, MARY ELISABETH
OSTERMANN, in her official and individual
capacity, LIEUTENANT MICHAEL GOLIO, in
his official and individual capacity,

                Defendants.
--------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
13-CV-1187 (ADS)(GRB)

**APPEARANCES:**
**Law Offices of Frederick K. Brewington**
*Attorneys for the Plaintiff*
556 Peninsula Boulevard
Hempstead, NY 11550
      By:    Frederick K. Brewington, Esq., Of Counsel

**Bee Ready Fishbein Hatter & Donovan, LLP**
*Attorneys for the Defendants*
170 Old Country Road
Mineola, NY 11501
      By:    Michael P. Siravo, Esq.,
              Andrew K. Preston, Esq.,
              Deanna D. Panico, Esq.,
              Stephen Louis Martir, Esq., Of Counsel

**SPATT, District Judge**:

This action arises out of allegations by the Plaintiff Joseph A. Volker (the "Plaintiff") that

two discrete sets of Defendants: (1) the "County Defendants", including the County of Nassau (the

"County"), and the Nassau County Sheriff's Department (the "NCSD"), and (2) the "Individual

Defendants," including then-acting Sheriff Michael J. Sposato ("Sposato"), Deputy County

1

Attorney and General Counsel Elizabeth Loconsolo ("Loconsolo"), Mary Elisabeth Ostermann ("Ostermann"), and Lieutenant Michael Golio ("Golio"), violated his civil rights. Specifically, he alleges that all of the Defendants violated 42 U.S.C. § 1983 ("Section 1983"); that the County Defendants violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* ("Title VI"); that all of the Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and that the County Defendants and the Defendants Sposato and Loconsolo violated Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). The Plaintiff also brought New York State claims against the County Defendants for breach of contract and violation of the New York State Human Rights Law, N.Y. EXEC. LAW § 296 (the "NYSHRL").

Presently before the Court is a motion by the Defendants, pursuant to FED. R. CIV. P. 56 for summary judgment on each of the claims against them. For the following reasons, their motion for summary judgment is denied in part and granted in part.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the parties' joint statement of material facts unless otherwise noted.

#### 1. The Parties

The Plaintiff was hired by the Defendant NCSD in September 2007 as an Affirmative Action Specialist III ("AAS"). The Defendant NCSD is an administrative arm of the Defendant County, and one of its functions is overseeing the Nassau County Correctional Center. The Defendant Sposato was the acting Sheriff at the NCSD during the relevant period. The Defendant Loconsolo was the general counsel for the NCSD during the relevant period. The Defendant

Ostermann was the director of the Nassau County Equal Employment Opportunity ("EEO") office. The Defendant Golio was an employee of NCSD during the relevant period. It appears that the Plaintiff reported to the individual Defendants in different ways and at different times.

### 2. The Plaintiff's Responsibilities

The parties have apparently disagreed with regard to the Plaintiff's responsibilities since he was employed. The Plaintiff states that the AAS position was created by a consent decree that was the result of a lawsuit against the Defendant County by a fraternal organization known as the "Brothers of the Shield," and that his responsibilities as AAS were therefore defined by the Defendant County and the consent decree. The Plaintiff believes that his duties included planning, directing and coordinating all affirmative action studies; investigating incidents of bias; making recommendations concerning such incidents and arraigning all resultant grievance procedures; writing reports and promotional articles on affirmative action programs; recruiting and reaching out to the community; and assisting in the preparation and teaching of cultural diversity and fair employment practices training programs both in the department and in other agencies.

The Defendants state that when the AAS position was created by the Defendant County, the Defendant NCSD already had employees who fulfilled some of the roles that the Defendant County delegated to the AAS position, and therefore the Plaintiff's responsibilities were defined by the agency and its supervisors. To that end, the Defendants say that the Plaintiff's duties were narrower than the Plaintiff claims. They state that his only recruitment responsibilities were obtaining and distributing the notice of exam for correction officer positions; that his only investigative responsibilities were to act as the EEO Representative for the NCSD; and that his only recruitment/teaching responsibilities were informing new recruits what his position was, where he was located, and how to find him.

The titles of EEO representative and AAS are distinct, and each have different responsibilities. Any employee may be an EEO representative. It is a volunteer position, and secondary to one's actual title. The AAS position is a civil service position which requires an exam and qualifications. Although the Defendants state that the Plaintiff had to perform the functions of EEO representative, the individual Defendants did not agree in their depositions whether the Plaintiff's duties as EEO representative were collateral or primary. The Defendant Loconsolo testified that the Plaintiff's primary duties were to act as the EEO representative. (Pl. Ex, D, Loconsolo Dep. ("Loconsolo Dep.") at 127–28). The Defendant Ostermann testified that the Plaintiff's EEO duties were collateral. (Pl. Ex. Q, Ostermann Dep. ("Ostermann Dep") at 36–37). Defendant Loconsolo also admitted in her deposition that the County did not have an affirmative action program and that she also forbid Dr. Volker from trying to create one, despite the fact that his title was Affirmative Action Specialist. (Loconsolo Dep. at 91).

The Plaintiff says that he was never clearly told what his duties were, and that he was confused about his roles. He was confused because he was told that his primary duties were to act as an EEO representative, despite the fact that he was hired to be an AAS. He argues that he was constrained from performing the majority of what he believed were his AAS duties. The Plaintiff claims that that he requested meetings approximately twelve times for clarification on his duties; and that he asked for a standard operating procedure about his responsibilities. He states that he received neither instruction.

There is a dispute about the adequacy of the Plaintiff's training, but it appears that the parties agree that he received a copy of the Nassau County EEO policy; attended an orientation; received a packet about his position; and met with the Defendant Ostermann for a few hours about the position.

### 3. The Plaintiff's Performance as EEO Representative

Apparently after the Plaintiff was hired, the parties also disagreed about how the Plaintiff should perform his job as EEO representative. On several occasions, including in May 2008, July 2008, and March 2009, the Plaintiff conducted EEO interviews outside of the NCSD facilities, including at a diner and a parking garage. The Plaintiff took notes beyond the required "bare bones" details of the EEO complaint. The Plaintiff states that County EEO policy permitted him to take detailed complaints; to interview complainants off-site; to interview complainants without a witness; to make a preliminary determination regarding the EEO complaints, and does not specify a timeline for notifying an EEO superior.

On the other hand, the Defendants state that all of those practices were in violation of NCSD EEO policy, and that the Plaintiff was supposed to notify the Defendant Ostermann as soon as possible about any EEO complaints. The Defendants contend that the Plaintiff endangered the confidentiality of the EEO complainants. However, the Defendant Ostermann, the EEO Director for the County, testified in her deposition that EEO policy does not require that a witness be present during an initial interview, (Ostermann Dep. at 233), nor does it require that interviews be conducted in certain places. (Ostermann Dep. at 229; *see also* Loconsolo Dep. at 410). The Defendants also state that the Plaintiff violated policy by taking overly detailed complaints. However, in her depositions the Defendant Ostermann admitted that the EEO policy permits discretion as to how long an EEO representative should interview a complainant (Ostermann Depo. 206), and that it does not require an EEO representative to limit an employee's complaint. (Ostermann Dep. at 202). The Defendant Ostermann also specifically stated that EEO policy does not require an EEO representative to use a specific form. (Ostermann Dep. at 235–39).

### 4. Various Actions of the Plaintiff Allegedly Outside the Scope of His Employment

Apparently, the Plaintiff had difficulty performing the position and repeatedly acted outside of the duties assigned to him in violation of the orders he received from the Sheriff. The Plaintiff claims that he was performing the job he thought he was supposed to be doing. The Defendants state that each of the following were examples of the Plaintiff acting outside of the scope of his employment. In response, the Plaintiff argues that he was doing his job.

The Plaintiff prepared and distributed a survey on February 15, 2008, which assessed the need for a program to "train the trainer." On September 24, 2008, the Plaintiff told the Defendant Ostermann that the NSCD workforce should mirror the inmate population so that the inmates could view the corrections officers as role models. On or about October 21, 2008, the Plaintiff asked to attend a program about racism in the mortgage department on behalf of the NCSD, but was informed that it was not part of his duties. On October 30, 2008, the Plaintiff "sought to involve himself in matters pertaining to a Department of Justice investigation and a Consent Decree", both of which were legal matters handled by Nassau County. On October 31, 2008, the Plaintiff sought to post anti-bias and anti-harassment posters "off-compound." On November 5, 2008, the Plaintiff advised the Sheriff to put out a statement to be read at all lineups about the election of President Barack Obama. On January 20, 2009, the Plaintiff suggested that employees should be permitted to watch President Obama's inauguration. On January 23, 2009, the Plaintiff issued an annual report on affirmative action to the Defendant Sposato, discussed below. On February 10, 2009, the Plaintiff tried to attend a meeting about inmate visitors, and often tried to advocate on behalf of inmate visitors. On February 26, 2009, Plaintiff recommended that corrections officers attend a training program about racism. On March 19, 2009, the Plaintiff requested to attend a meeting about the Nassau County Police Department.

### 5. The Plaintiff's Annual Report

On January 23, 2009, the Plaintiff sent an affirmative action annual report to Defendant Sposato. In his report, the Plaintiff expressed concern that there was no affirmative action in the NCSD; that Defendant Loconsolo attempted to stop the Plaintiff from fulfilling his duties; that he was not given any training; and he made recommendations to help the NCSD comply with EEO and affirmative action. The Plaintiff gave the report only to Defendant Sposato, and says that it was intended solely for the Defendant Sposato. Nonetheless, the Defendant Sposato gave the report to the Defendant Loconsolo. The Plaintiff argues that the Defendant Sposato reviewed the report with Defendant Loconsolo, but did not ask her about any of the Plaintiff's concerns.

The Defendants say that the report was unauthorized; that it contained false and inflammatory statements; and that it contained unsupported and inappropriate legal analysis. The Plaintiff says that he believed that it was part of his job; that former employees in his position had previously submitted such reports; that he had told Sposato he was going to submit it; that former employees had submitted them; and that the Defendant Sposato did not reject the report when the Plaintiff gave it to him; nor did he tell him that it was unauthorized or that he would be subject to discipline.

### 6. The Plaintiff's Notices of Personnel Action

The Plaintiff was issued a notice of personnel action ("NOPA") on March 23, 2009, with a fine of one hundred dollars and a loss of three days of vacation. The NOPA states that the Plaintiff violated NCSD policy by interviewing an EEO complainant on March 9, 2009, without a witness and at an unauthorized location; that he did not notify the EEO director of the complaint; did not receive authorization to conduct the interview; and that he generated a report without authorization.

The Defendant Golio asked the Plaintiff to come to his office by the close of business on March 24, 2009 to be served with the NOPA. The Defendants state that the Plaintiff failed to appear. The Plaintiff says that he was entitled to have a union representative present and could not find one quickly enough to attend the disciplinary meeting. The Plaintiff was issued a second NOPA, with a resultant fine of $100 and a demotion for four pay periods.

On August 26, 2009, the Plaintiff was issued an NOPA in connection with his annual affirmative action report. The Plaintiff was suspended for twenty days.

On November 18, 2009, the Plaintiff was relieved of his AAS/EEO duties, and was directed to report to the Sheriff each day for his daily assignments.

The Plaintiff was issued another NOPA on December 17, 2009 for EEO interviews that he conducted between March 13, 2009 and April 9, 2009, where he "failed to make timely notifications;" did not use the required complaint intake form; and allegedly submitted false statements.

On March 5, 2010, the Plaintiff was issued an NOPA with a termination penalty for leaving his post without proper authorization and for concealing his identity from County employees at the Nassau County Human Resources Department. He was issued another NOPA with a termination penalty on that day for conducting an interview without a witness present, without notice to Defendant Ostermann, and without using the proper form on a date between October 2, 2009 and November 20, 2009. The NOPA notes that the Plaintiff was told numerous times about the NCSD policies.

### 7. The Defendants Loconsolo and Ostermann

The Plaintiff argues that the Defendants Ostermann and Loconsolo acted outside of the scope of their employment while either supervising him or disciplining him. The Defendant

Ostermann, who is the Director of the EEO Office for the County of Nassau, admitted in her deposition that she did not have supervisory authority over any employees including the Plaintiff, and that she did not have authority to discipline or issue NOPAs against the Plaintiff in the event that he did not comply with her instructions. The Plaintiff argues that nonetheless, the Defendant Loconsolo supervised him and also supervised the filing of disciplinary charges against him. The Defendant Loconsolo testified that she did not supervise the Plaintiff, but merely reminded him of what his duties were, and if the Plaintiff failed to perform those duties, she notified the Defendant Sposato.

The Executive Director of the Civil Service Commission wrote a letter to the Defendant Sposato on May 21, 2014, advising him that it was improper for the Defendant Loconsolo, as Legal Counsel to the Sheriff, to initiate disciplinary actions, or to supervise any individual directly or indirectly. The letter further stated that all of the Defendant Loconsolo's duties should be related to providing legal counsel. The Plaintiff argues that the Defendant Loconsolo should not have been permitted to be involved with EEO complaints because they are not related to providing legal counsel. The Defendant Loconsolo said in her deposition that she advised Defendant Sposato that NOPAs be issued against the Plaintiff, and she drafted all of the NOPAs that were given to the Plaintiff except one. She also held individual meetings with the Plaintiff to remind him of his duties.

### 8. Legal Filings

On July 28, 2009 and August 4, 2009, the Plaintiff filed complaints with the United States EEOC. One complaint was terminated as duplicative and the other complaint was terminated by the Plaintiff upon the filing of his federal lawsuit. On August 28, 2009, the Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging that he

faced retaliation for opposing discrimination and carrying out his duties as an AAS. That complaint was eventually terminated. On December 22, 2011, the Plaintiff filed a second complaint with the NYSDHR. That complaint was dismissed for a finding of no probable cause. Plaintiff filed his initial complaint with this Court on March 6, 2013. Plaintiff did not receive a right to sue notice until March 26, 2013, and the Plaintiff has not served a notice of claim upon the Defendant County in connection with any of the allegations made in the instant lawsuit.

All of the Plaintiff's NOPAs were issued after the Plaintiff submitted his annual affirmative action report, and four of the NOPAs were issued after he filed his complaint with the EEOC.

**9. Arbitration**

The Plaintiff filed a grievance with his union with regard to several of the NOPAs. On February 9, 2015, a neutral arbitrator found that the Plaintiff was guilty of misconduct and upheld the punishment of the first NOPA. The arbitrator found that the Plaintiff had proper training, and that the manner in which he conducted EEO interviews and generated reports was in violation of NCSD policy. The arbitrator said that the conduct in which the Plaintiff was alleged to have engaged in the second NOPA was not actionable misconduct, though it was ill-advised. As to the third NOPA, the arbitrator found that the Plaintiff was again guilty of misconduct and upheld the twenty-day suspension. The arbitrator said that the Plaintiff had a personal vendetta against the Defendant Loconsolo, that his report was unfounded and embellished. The Plaintiff states that the Defendants misrepresented facts and law to the arbitrator.

**B. Relevant Procedural History**

On March 6, 2013, the Plaintiff commenced an action in this Court and filed a complaint against all of the Defendants. The Plaintiff alleged that the County Defendants discriminated against him and retaliated against him based on his disability in violation of Title VI; that the

County Defendants and the Defendants Sposato and Loconsolo discriminated against him because of his disability in violation of the ADA; that all of the Defendants violated his 1st, 5th, and 14th amendment rights, and conspired to do so, in violation of Section 1983; that the County Defendants engaged in a policy or practice of systematically depriving African Americans of their constitutional rights in violation of Section 1983; that the County Defendants breached their contract with the Plaintiff in violation of New York State common law; and that the County Defendants had created a hostile work environment and discriminated against him based on his disability in violation of the NYSHRL.

On July 1, 2013, the Plaintiff filed an amended complaint against all of the Defendants. The amended complaint retained all of the causes of action of the initial complaint and added causes of action for disability discrimination and retaliation under Title VII against all of the Defendants.

On July 24, 2013, the Defendants filed an answer to the amended complaint. On March 21, 2016, the Defendants filed the instant motion for summary judgment pursuant to FED. R. CIV. P. 56.

The Plaintiff filed a response to the Defendants' motion for summary judgment on April 28, 2016, where he voluntarily withdrew his Title VI, ADA and NYS common law breach of contract claims. (Pl. Mem. of Law at 1). He further acknowledged that his Title VII claims were not viable against the individual Defendants, (*id.*), and "that Title VII employment discrimination claims do not include disability as a protected class." (*Id.* at 9). Therefore, the Plaintiff's remaining claims are a Title VII retaliation claim against the County Defendants, various 1983 claims against some or all of the Defendants, and NYSHRL disability discrimination and hostile work environment claims against the County Defendants.

## II. DISCUSSION

### A. The Standard of Review

Under FED. R. CIV. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When deciding a motion for summary judgment, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non–moving party.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)).

"[A]t the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (internal quotation marks omitted)). In other words, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Barrows v. Seneca Foods Corp.,* 512 F. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole,* 678 F.3d 166, 174 (2d Cir. 2012) (internal quotation marks omitted)). The Court should not attempt to resolve issues of fact, but rather "assess whether there are any factual issues to be tried." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.,* 677 F.3d 109, 119 (2d Cir. 2012).

The movant has the burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). If a nonmoving party fails to make a sufficient showing on an essential element of their case where they will have the burden of proof, then summary judgment is appropriate. *Id.* at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to

the motion for summary judgment is not met. *Liberty Lobby,* 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. *See Dawson v. Cty. of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004).

**B. As to the Plaintiff's Title VII Retaliation Claim against the County Defendants**

The Defendants argue that the Plaintiff's performance of his duties is not a protected activity under Title VII, and that the Defendants had legitimate non-retaliatory reasons for the adverse employment actions taken against the Plaintiff. In opposition, the Plaintiff argues that his activities are protected under the Title VII "opposition clause"; that the Defendants' stated reasons for their employment actions are pretext; and that questions of fact remain. The Court agrees with the Plaintiff.

Title VII prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice." 42 U.S.C.A. § 2000e–3(a); *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) ("Title VII . . . prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity." (citations omitted)); *Hicks v. Baines,* 593 F.3d 159, 161 (2d Cir. 2010) (same). Section 703(a) of Title VII defines "unlawful employment practice" in this way: "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin . . . ." 42 U.S.C. § 2000e–(2)(a)(1).

Retaliation claims under Title VII are assessed using the burden-shifting framework laid out in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Summa v. Hofstra Univ.,* 708 F.3d 115, 125 (2d Cir. 2013) ("The burden-shifting framework laid out in *McDonnell Douglas* . . . governs retaliation claims under [] Title VII") (citing *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 (2d Cir. 2006)). Under the test, "[f]irst, the plaintiff must establish a *prima facie* case of retaliation. If the plaintiff succeeds, then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted); *see also Tepperwien*, 663 F.3d at 568 n.6 (discussing the burden shifting analysis in retaliation context); *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005) (same). If the employer succeeds at the second stage, the presumption of retaliation dissipates, and the Plaintiff must show that, but for the protected activity, he would not have been terminated. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, -- U.S. --, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013) (holding that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *see also Ellis v. Century 21 Dep't Stores,* 975 F. Supp. 2d 244, 277–79, 2013 WL 5460651, at *27 (E.D.N.Y. 2013) (same); *Russo v. New York Presbyterian Hosp.,* 972 F. Supp. 2d 429, 454–55 (E.D.N.Y. 2013) (same); *Moore v. Kingsbrook Jewish Med. Ctr.,* No. 11–CV–3625, 2013 WL 3968748, at *14 (E.D.N.Y. July 30, 2013) (same).

**1. As to whether the Plaintiff Presents a *Prima Facie* Case of Retaliation**

In order to establish a *prima facie* case of retaliation, a plaintiff must establish "(1) [he] engaged in protected activity; (2) the employer was aware of this activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between

the alleged adverse action and the protected activity." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,* 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (quoting *Lore v. City of Syracuse,* 670 F.3d 127, 157 (2d Cir. 2012)); *see also Summa,* 708 F.3d at 125; *Schiano,* 445 F.3d at 608. "The burden at the summary judgment stage for Plaintiff is minimal and *de minimis,* and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (quoting *Jute,* 420 F.3d at 173)).

### a. As to whether the Plaintiff Engaged in Protected Activity Under the "Opposition Clause"

The Defendants argue that the Plaintiff did not engage in protected activity because the Plaintiff's activities do not fall under either the "participation clause" or the "opposition clause" of Title VII. The Plaintiff argues he engaged in protected activity by opposing discrimination through the filing of his annual report. The Court agrees that the Plaintiff engaged in activities that were protected by Title VII by opposing discrimination.

Protected activities under Title VII include both "opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings." *Jute,* 420 F.3d at 173; *see also Tepperwien,* 663 F.3d at 567; *Hicks,* 593 F.3d at 161. When opposing discrimination, the Plaintiff only needs a good faith belief that the conduct was prohibited by Title VII. Said differently, the conduct which the Plaintiff is opposing does not need to be actually prohibited by Title VII, he must merely believe that it is prohibited. *La Grande v. DeCrescente Distrib. Co.,* 370 F. App'x 206, 212 (2d Cir. 2010) ("It is well-established that a 'plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as

he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'") (quoting *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002)); *Dall v. St. Catherine of Siena Med. Ctr.,* 966 F. Supp. 2d 167, 192–93 (E.D.N.Y. 2013) ("[P]laintiff need only have a 'good faith belief' that employer conduct was prohibited"); *Kanhoye v. Altana Inc.,* 686 F. Supp. 2d 199, 206 (E.D.N.Y. 2009) ("An employee is privileged to report and protest workplace discrimination, whether that discrimination be actual or reasonably perceived.") (quoting *Matima v. Celli,* 228 F.3d 68, 78 (2d Cir. 2000) (quotation marks omitted)).

The law also does not require that the employee file a formal complaint when opposing the discriminatory practices—an informal complaint is sufficient. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management . . . and expressing support of co-workers who have filed formal charges.'") (quoting *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990)); *Ellis,* 975 F. Supp. 2d at 281 ("In order to oppose sexual harassment, [p]laintiff need not have filed a formal complaint as long as she complained of activity that she had a good faith, reasonable belief violated the law."); *Bennett v. Hofstra Univ.,* 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) (noting that Title VII does not require a formal complaint); *Martin v. State Univ. of N.Y.,* 704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that informal complaints to supervisors constitute protected activity under Title VII.") (citations and quotations omitted).

The Plaintiff admits that merely doing his job and passing along EEO complaints is not actionable under Title VII. *See Townsend v. Benjamin Enterprises, Inc.,* 679 F.3d 41, 49 (2d Cir.

2012) ("Every Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as a protected activity under the participation clause.").  The Plaintiff instead argues that the submission of his annual report qualifies as opposition to discrimination, and is therefore protected by Title VII.  He claims his annual report should be deemed protected because in that report he complained about the lack of affirmative action at the NCSD and that discrimination investigations were being stymied.

The Second Circuit has repeatedly held that complaints about affirmative action alone are not actionable under Title VII.  In *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590 (2d Cir. 1988), the Second Circuit upheld the District Court's dismissal of a complaint where the plaintiff complained about the university's affirmative action program.  *Id.* at 594.  In doing so, the Court held that the plaintiff

> did not prove a good faith, reasonable belief that the [affirmative action practices] constituted an unlawful employment practice. . . .  Since section 704(j) of Title VII states that affirmative action in employment practices is not required by Title VII, [], an employer's failure to follow its own voluntary affirmative action program cannot, by itself, constitute an unlawful employment practice within the language of section 703(a)(1).

*Id.*  Although the Second Circuit in *Manoharan* based its holding on the factual finding of the district court that the plaintiff objected to a specific hiring practice "primarily on personal grounds," *id.*, the Second Circuit addressed the issue again in a later case.

In *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678 (2d Cir. 2016), the Second Circuit affirmed the district court's dismissal of a complaint alleging retaliation under Title VII where the plaintiff complained about changes in the department's complaint handling procedure and said it would result in discrimination.  *Id.* at 680.  The Court went on to say that "opposing an employer's failure to engage in affirmative action is nevertheless unprotected under the statute."  *Id.* at 681

17

(citing *Manoharan*, 842 F.2d at 594). The Court held that the plaintiff did not possess a good faith, reasonable belief that changing the department's affirmative action policies would qualify as an unlawful employment practice under the statute. *Id.* These two cases make it unclear whether a Plaintiff can have a good faith reasonable belief that a failure to promote affirmative action is unlawful under Title VII, or whether it is *per se* unreasonable for a plaintiff to so believe.

Nevertheless, the fact that the Plaintiff complained of the affirmative action policies of the NCSD, cannot "by itself constitute an unlawful employment practice within the language of [Title VII]." *Manoharan*, 842 F.2d at 594. However, the Plaintiff also complained that complaints of discrimination were being stymied by the Defendants Loconsolo and Sposato. Specifically, he noted that individuals had complained that Defendant Loconsolo's role as an EEO representative had a chilling effect on the filing of complaints. (Pl. Ex. H, Pl.'s Affirmative Action Unit Annual Report ("Annual Report") at 9, 38). He recommended that Defendant Sposato reiterate that the general counsel represents the interests of the NCSD and that the EEO representative's role be clarified. (Annual Report at 10). The Plaintiff later said in his EEOC complaint,

> [a]fter reviewing employment discrimination complaints, I recommended in an Affirmative Action report in January 2009 that some complaint be followed up on, such as complaints of discrimination by African Americans, Hispanics, and persons with disabilities. I also recommended that a case that had been dismissed be reopened. I also stated . . . that I believed that Respondent is more interested in suppressing that investigating allegations of discrimination.

(Def. Ex. B, Pl.'s August 4, 2009 EEOC Complaint).

Here, the Plaintiff went beyond merely passing along internal complaints. He registered his opposition to the Defendant NCSD's suppression of discrimination complaints. The Second Circuit has said "if an employee—even one whose job responsibilities involve investigating complaints of discrimination— . . . is critical about the discriminatory employment practices of her employer, that employee has engaged in a protected activity under § 704(a)'s opposition

clause." *Littlejohn v. City of New York*, 795 F.3d 297, 318 (2d Cir. 2015). That is precisely what the Plaintiff did here—he complained about the discriminatory employment practices of his employer.

"While advocacy for affirmative action is not a protected activity, *Correa v. Mana Prod., 550 F. Supp. 2d 319, 330 (E.D.N.Y. 2008)*, opposition to discrimination is protected under Title VII." *Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 711 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 38 (2d Cir. 2014) (citing *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990) (Title VII protects "informal protests of discriminatory employment practices, including making complaints to management . . . protesting against discrimination by industry or by society in general")).

Therefore, the Court finds that the Plaintiff engaged in activity that is protected by Title VII's opposition clause when he opposed the County Defendant's allegedly discriminatory practices.

### b. As to whether the Plaintiff Engaged in Activities Protected Under Title VII's "Participation Clause"

The Plaintiff argues that the filing of his complaints with the EEOC are protected activities that fall under the opposition clause. The Court disagrees because it believes that the Plaintiff's EEOC complaints fall under Title VII's participation clause instead. Title VII's participation clause specifically states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. It is well established that "'investigation . . . under this subchapter [] plainly refers to an investigation that occur[s] in conjunction with or after the filing of a formal charge with the EEOC." *Townsend v. Benjamin Enterprises, Inc.,* 679 F.3d 41, 49 (2d Cir. 2012).

The Defendants argue that the Plaintiff never testified in his deposition that the Defendants retaliated against him because of his complaints to the EEOC. That does not bear on whether the Plaintiff engaged in a protected activity under the participation clause. Although a Plaintiff must have a good faith belief that employment practices that he opposes are illegal, there is no requirement that the Plaintiff believes that he was retaliated against because of his complaints. At this stage, the Plaintiff need only establish that he engaged in a protected activity. Because the filing of complaints with the EEOC are protected activities under Title VII, the Plaintiff has established that element.

Therefore, the Court finds that the Plaintiff also engaged in a protected activity when he filed complaints with the EEOC.

### c. As to the Remaining *Prima Facie* Factors

The Plaintiff's employer was clearly aware of the Plaintiff's annual report, because the Plaintiff submitted his report to the Defendant Sposato, who in turn gave it to the Defendant Lonconsolo. The Plaintiff suffered materially adverse employment action—all of the Plaintiff's NOPAs were issued after he submitted his annual report, and four of them were issued after he filed complaints with the EEOC. He was suspended, lost vacation days, lost pay, and was terminated. The Court also finds that there was a causal connection between the protected activity and the alleged adverse actions, because they were so close in time. The Plaintiff filed his annual report in January of 2009, and the Plaintiff received two NOPAs two months later. The Defendants themselves admit that the Plaintiff engaged in many of the activities for which he was chastised before he submitted his annual report, but he was never punished until after he submitted his annual report. The Plaintiff received an NOPA that resulted in a suspension approximately three weeks after he filed his EEOC complaints. The Plaintiff has "proffered evidence supporting a strong

temporal connection between h[is] involvement in protected activity on the one hand, and instances . . . of retaliation on the other." *Jute*, 420 F.3d at 180; *see also Summa*, 708 F.3d at 127 (holding that a plaintiff's "presentation of a temporal connection can be enough in and of itself . . . to permit a reasonable jury to find causation").

Therefore, the Court finds that the Plaintiff has made out a *prima facie* case of retaliation, and now reviews whether the County Defendants have legitimate, non-retaliatory reasons for the adverse employment actions taken against the Plaintiff.

**2. As to whether the County Defendants Have Legitimate, Non-retaliatory Reasons for the Adverse Employment Actions Taken Against the Plaintiff**

The County Defendants state that they had numerous reasons for taking the adverse employment actions against the Plaintiff. In both their memorandum of law and the NOPAs they issued to the Plaintiff, the Defendants state that they repeatedly told the Plaintiff what duties to perform, and how to perform them, but that the Plaintiff continually defied them. The actions taken by the Plaintiff that the Defendants specifically point to are his off-site EEO interviews; his interviews conducted without a witness; his detailed notes from EEO complaints; his delay in notifying the Defendant Ostermann of EEO complaints; drawing conclusions from EEO complaints and usurping the role of the EEO director; falsely stating that the NCSD did not take any action regarding certain complaints; his annual report; and that the Plaintiff left his post and refused to identify himself to the Human Resources Department.

Therefore, the County Defendants have provided non-retaliatory reasons for their adverse employment actions, and the burden shifts back to the Plaintiff to show that retaliation was the but for cause of the adverse employment actions.

**3.  As to whether Retaliation was the But For Cause of the Plaintiff's Adverse Employment Actions**

"'But-for causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 845–46 (citing *Univ. of Texas Sw. Med. Ctr.,* 133 S. Ct. at 2526).

"A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Id.*

Here, the Court finds that the County Defendants' stated reasons for the adverse employment actions have weaknesses, inconsistencies and contradictions.  By some of the individual Defendants' own admissions, County EEO policy does not require that an EEO representative use a certain form (Ostermann Dep. at 235–239); have a witness present when conducting interviews (Ostermann Dep. at 233); interview EEO complainants at a certain place (Ostermann Dep. at 229, 252; Loconsolo Dep. at 410); or limit the details of a complaint. (Ostermann Dep. at 202–206).  The Defendant Ostermann was the EEO Director for the Defendant County during the relevant period, and the County's own EEO guidelines state that an EEO representative must "document, document, document" and "verify the facts and make credibility determinations" before bringing the complaint to the "department head to consider resolution options."  (Pl. Ex. P, "Handling Workplace Investigations," at 32).  The guidelines state that the complaint be brought to the attention of the EEO Director "no later than a week" after receipt of a

complaint and only after the EEO representative obtained the necessary facts. (Pl. Ex. I, EEO Policy, at 8, "Initial Complaint" section).

Perhaps even more problematic, the Defendants admit that the Plaintiff engaged in all of these activities numerous times before he submitted his annual report. Yet he did not receive any NOPAs until after he submitted his annual report.

As for the Plaintiff's annual report, the Plaintiff testified in his arbitration proceeding that he believed that he was required to submit a report (Pl. Ex. A, Volker Arbitration Transcr. of June 19, 2012 ("Volker Arbitration Transcr.") at 59); that previous employees in the AAS position had written annual reports (*Id.*); and that he had talked to the Defendant Sposato about submitting it. (*Id.* at 75–77). The Nassau County civil service description of the AAS position includes "prepar[ing] reports and writ[ing] promotional articles on affirmative action programs." (Pl. Ex. B, Nassau County AAS Job Description). The Defendants also issued the NOPA disciplining the Plaintiff for the annual report approximately three weeks after he filed complaints with the EEOC.

The record discloses that there is a question of fact as to what the Plaintiff's actual responsibilities were at work—whether he was bound by the directives of the Defendant Sposato, or by the procedures outlined by the Defendant County.

There are also questions of fact as to whether it was proper for the Defendants Ostermann and Loconsolo to supervise the Plaintiff and/or assist in the drafting of the NOPAs. Because Loconsolo was implicated in the Plaintiff's annual report, it would be reasonable for a juror to find that her actions taken towards him were pretextual, especially because the record suggests that it might have been improper for her to supervise him or discipline him.

Finally, one of the NOPAs that terminated the Plaintiff noted that he failed to identify himself and hid his badge at the Nassau County Human Resources Department. The Plaintiff

disputes that this happened, and as there are questions of fact surrounding whether the previous NOPAs were based on pretext, the Court finds that these acts alone do not meet the County Defendant's burden of providing legitimate non-retaliatory reasons for the Plaintiff's termination.

As we must construe the record in the light most favorable to the Plaintiff at this stage of the case, *see Liberty Lobby,* 477 U.S. at 255, "we conclude that there is a sufficient basis for a trier of fact to doubt the persuasiveness of [the defendants'] proffered evidence and ultimately to find that the legitimate, non-retaliatory reasons offered by [the defendants] . . . were pretextual." *Jute*, 420 F.3d at 180 (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir. 1998) (alterations and quotation marks omitted)).

Therefore, questions of fact remain, and the Defendants' motion for summary judgment to dismiss the Plaintiff's Title VII retaliation claim against the County Defendants is denied.

**C.  As to the Plaintiff's Section 1983 Claims**

The Defendants argue that the Plaintiff's 1983 claims fail as a matter of law because they are barred by the statute of limitations; the Plaintiff's free speech claim was made pursuant to his official duties; the Plaintiff has not asserted a cognizable *Monell* claim; and his conspiracy claim is barred by the intra-corporate conspiracy doctrine.  The Plaintiff states that since he has alleged a continuing violation by the County, his claims are not time–barred, and that issues of fact remain as to his 1983 claims.  The Plaintiff does not address the Defendants' arguments about his 1983 conspiracy claim in any meaningful way.  Nevertheless, the Court finds that all of the Plaintiff's 1983 claims are barred by the statute of limitations.

**1.  As to whether the Plaintiff's 1983 Claims are Time-Barred**

The statute of limitations for claims brought pursuant to Section 1983 is determined by state law, and in New York State, the statute of limitations for 1983 claims is three years. *Owens*

*v. Okure,* 488 U.S. 235, 249–51, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989) (holding that the most appropriate statute of limitations in a § 1983 action is found in the "general or residual [state] statute [of limitations] for personal injury actions"); *Shomo v. City of N.Y.,* 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir. 2001) (quoting *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994)); *see also Shomo,* 579 F.3d at 181 ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm.") (internal quotation marks omitted); *Rene v. Jablonski,* No. 08 Civ. 3968, 2009 WL 2524865, at *5 (E.D.N.Y. Aug. 17, 2009) ("Federal law governs the question of when a Section 1983 claim accrues. Under federal law, the time of accrual is that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." (quoting *Covington v. City of N.Y.,* 171 F.3d 117, 121 (2d Cir. 1999) (alterations, quotation marks and citations omitted))).

The Plaintiff points to the Second Circuit's statement in *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995), that when a Plaintiff has alleged a 1983 violation against a county or municipality, the cause of action may necessarily accrue "only later when it is clear, or should be clear, that the harmful act is the consequence of a county policy or custom." *Id.* at 1157. However, in that same case, the Court said, "when a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run, and the later awareness that the actionable wrong was also part of a conspiracy does not expand the statutory time limit." *Id.* Furthermore, the Second Circuit later held in a summary order that this was "demonstrably dictum," and "that a § 1983

cause of action accrues when 'the plaintiff becomes aware that [he] is suffering from a wrong for which damages may be recovered in a civil action.'" *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (quoting *Eagleston v. Guido,* 41 F.3d 865, 872 (2d Cir. 1994)).  The Court held that it "decline[s] to eviscerate that rule by holding that the limitations period for a cause of action against a municipality runs anew upon the future discovery of facts tangentially related to a *Monell* claim." *Id.*

One problem for the Plaintiff here is that he has alleged that the very reason for his position was that the County of Nassau had a history of violating the rights of minority employees. Therefore, even if the Plaintiff's *Monell* allegations are true, he knew about them as soon as he began working for the County Defendants.  The Court's statement in *Pinaud* does not permit plaintiffs to circumvent the statute of limitations rule merely by pleading a *Monell* claim.  The Second Circuit's statement in *Pinaud*, assuming that it is not mere dictum, still holds that a cause of action under Section 1983 accrues when the plaintiff knows or should know that the injury is a result of county policy or custom.  52 F.3d at 1157.  The Plaintiff alleges that the purpose of his position as an AAS was to ameliorate the NCSD's race issues.  Therefore, he knew about the alleged policy or custom when he began working for the NCSD.  Furthermore, when he issued his annual report in January 2009, he pointed out the NCSD's continued deficiencies with regard to affirmative action and discrimination.  The NCSD began issuing NOPAs to the Plaintiff after he submitted his first annual report, and the Plaintiff alleges that even the first NOPA was part of the alleged policy or custom.   The Plaintiff is unable to point to any evidence that he did not know that his termination was the result of a policy or custom of Nassau County until after he was terminated.  *See Ruiz v. Suffolk Cty. Sheriff's Dept,*, No. 03–CV–3545, 2008 WL 4516222, at *12 (E.D.N.Y. Oct. 2, 2008) (applying *Pinaud* where there was evidence that the Plaintiff did not know

that his alleged injuries were part of a county custom or policy until after the statute of limitations had begun to run); *Damino v. City of N.Y.*, No. 99–CV–3638, 2004 WL 2032515, at *5 (E.D.N.Y. Sept. 13, 2004), *aff'd*, 332 F. App'x 679 (2d Cir. 2009) (applying *Pinaud* where the Plaintiff did not learn of the basis for his *Monell* claim until seven years after the alleged injury); *Clinton v. City of New York,* No. 98–CV–3810, 1999 WL 105026 at *1–2 (S.D.N.Y. Mar. 1, 1999) (applying *Pinaud* where the Court found that the basis of the plaintiff's *Monell* claim was not apparent until more than two years after his arrest).

Indeed, the record supports the finding that the Plaintiff believed that the punishments he received while he was still employed were the result of the customs and policies of Nassau County that he now puts forth to support his claim. The Plaintiff himself points to evidence illustrating that he has been aware of the alleged policies or customs since he was first employed:

> In fact, Plaintiff's Annual Report . . . explicitly addressed ongoing issues with race discrimination by Defendants. Defendants['] history with such problems [i]s evidence[d] by the Consent Decree entered with the Brothers of the Shield, the continuing employment discrimination cases filed against Defendants since said Consent Decree, and Defendants willfulness to stymie internal discrimination complaints and affirmative action activities and programs required by said Consent Decree.

(Pl. Mem. of Law at 27).

The Plaintiff was terminated by the NCSD on March 5, 2010. He filed the instant complaint on March 6, 2013, and did not serve the Defendants with summonses until July 3, 2013. The Plaintiff filed his suit one day after the three-year statute of limitations. The fact that the Plaintiff's filing was only one day too late does not change the fact that he filed after the statute of limitations had expired. *See Pugh v. City of N.Y.*, No. 01–CV–0129, 2002 WL 398804, at *2 n.3 (E.D.N.Y. Jan. 15, 2002) (stating that "numerous courts have granted motions to dismiss where the lawsuit at issue was filed one day beyond the statute of limitations.") (citing *Merriweather v.*

*City of Memphis,* 107 F.3d 396, 400 (6th Cir. 1997); *Day v. Morgenthau,* 909 F.2d 75, 79 (2d Cir. 1990); and *Kasler/Cont'l Heller/Fruin Colnon v. United States,* 9 Cl.Ct. 187, 191 (1985)); *Glover v. Fed'n of Multicultural Programs*, No. 14–CV–4006, 2015 WL 4600645, at *7 (E.D.N.Y. July 29, 2015) (dismissing an employment discrimination suit because the plaintiff filed one day too late); *Moscowitz v. Brown,* 850 F. Supp. 1185, 1192 (S.D.N.Y. 1994) (holding that filing a complaint under Title VII even one day after the 90–day period results in dismissal of the complaint), *abrogated on other grounds by Lauture v. Int'l Bus. Machs. Corp.,* 216 F.3d 258 (2d Cir. 2000); *Toolan v. Bd. of Educ. of City of N.Y.*, No. 02–CV–6989, 2003 WL 22015437, at *2 (S.D.N.Y. Aug. 25, 2003) (same).

As the Plaintiff has failed to present any evidence to support the finding that the statute of limitations should be tolled because the Plaintiff did not know that his alleged injuries were part of a county policy or custom, the Court finds that his Section 1983 claims are therefore barred by the statute of limitations.

Accordingly, the Defendants' motion for summary judgment to dismiss the Plaintiff's Section 1983 claims is granted.

## D.  As to the Plaintiff's NYSHRL Claim Against the County Defendants

The Defendants argue that the Plaintiff did not assert state law claims after the service of a notice of claim as required under New York General Municipal Law (the "GML") §§ 50–e and 50–I and New York County Law § 52; that the Plaintiff is subject to the election of remedies doctrine; that the Plaintiff cannot establish a prima facie case of discrimination or retaliation; and that the Defendants had legitimate reasons for their actions.  In opposition, the Plaintiff argues that the notice of claim requirements are inapplicable to employment discrimination cases; that the County had actual notice of the Plaintiff's claims; and that questions of fact remain as to the

Plaintiff's NYSHRL claims. The Court again need not address the Plaintiff's last argument, because the Court finds that the Plaintiff's failure to file a notice of claim is fatal to all of his NYSHRL claims.

### 1. As to whether the Plaintiff's Failure to File a Notice of Claim is Fatal to his NYSHRL Claims

The GML limits the requirements for notice of claims to "personal injury, wrongful death or damage to real or personal property," § 50–I, and therefore "courts have held that the notice of claim provision of the General Municipal Law does not apply in cases of employment discrimination brought pursuant to [the NYSHRL]." *Anderson v. Nassau Cty. Dep't of Corr.*, 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008) (Spatt, J.) (citing *Hamm v. Hevesi,* No. 95–CV–6367, 1998 WL 92395, at *6 (S.D.N.Y. March 4, 1998) and *Dimonda v. New York City Police Dep't,* No. 94–CV–0840, 1996 WL 194325, at *6 (S.D.N.Y. April 22, 1996)).

However, N.Y. COUNTY LAW § 52(1) requires a notice of claim for claims "against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . and any other claim for damages arising at law or in equity." N.Y. COUNTY LAW § 52; *see also Feldman v. Nassau County,* 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004); *Keating v. Gaffney,* 182 F. Supp. 2d 278, 291 (E.D.N.Y. 2001). The notice of claim must be filed against a county or its employees within ninety days after such claim arises. N.Y. COUNTY LAW § 52 (citing N.Y. GEN. MUN. LAW § 50(e)). A plaintiff must allege in their complaint that they served the notice of claim, and that the defendants were afforded at least thirty days to satisfy the claim. *See Drees v. County of Suffolk,* No. 06–CV–3298, 2007 WL 1875623, at *13 (E.D.N.Y. June 27, 2007) (citing *Henneberger v. County of Nassau,* 465 F. Supp. 2d 176, 198 (E.D.N.Y. 2006)).

Contrary to the Plaintiff's assertion, a notice of claim is required in employment discrimination cases. *See* N.Y. COUNTY LAW § 52 (stating that it is required for any claim arising at law or in equity); *Friel v. Cty. of Nassau*, 947 F. Supp. 2d 239, 247 (E.D.N.Y. 2013) (Spatt, J.) (holding that a notice of claim was necessary when the Plaintiff alleged employment discrimination under the NYSHRL); *Johnson v. Cty. of Nassau*, No. 10–CV–06061, 2014 WL 4700025, at *23 (E.D.N.Y. Sept. 22, 2014) (same); *Anderson*, 558 F. Supp. 2d at 303 (same). The New York State Court of Appeals has held explicitly that "[w]hen an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court." *Mills v. Monroe Cnty.,* 59 N.Y.2d 307, 308 (N.Y. 1983).

Here, the Plaintiff has initiated a private civil rights lawsuit. He has not brought an action in the public interest such as a class action and his cause cannot be saved by that exception to the requirement. *See Wharton v. Cty. of Nassau*, No. 10–CV–0265, 2013 WL 4851713, at *15 (E.D.N.Y. Sept. 10, 2013); *Humphrey v. Cnty. of Nassau,* No. 06–CV–3682, 2009 WL 875534, at *20 (E.D.N.Y. Mar. 30, 2009); *Feldman v. Nassau County,* 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) (finding employment discrimination claim that "seeks the enforcement of [plaintiff's] private interests" is not one that seeks to vindicate a public interest); *Atkins v. County of Orange,* 251 F. Supp. 2d 1225, 1235 (S.D.N.Y. 2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."); *Turner v. County of Suffolk,* 955 F. Supp. 175, 177 (E.D.N.Y. 1997) (determining that claim was brought merely to enforce a

private right and not to vindicate a public interest where "[b]y its terms, plaintiff's complaint is limited to redressing plaintiff's individual injury").

The Plaintiff admits that he has not served a notice of claim, and the Court cannot extend the time to serve a late notice at this late juncture, *see Wharton*, 2013 WL 4851713, at *15; *Longi v. County of Suffolk,* 2008 WL 858997, at *8 (E.D.N.Y. March 27, 2008).

Furthermore, the Defendant's actual knowledge of the action or the nature of the claims is insufficient to satisfy this requirement. This argument has been expressly rejected by other courts who have held that neither actual knowledge nor complaints in other forums are sufficient substitutes for a notice of claim. *See Friel*, 947 F. Supp. 2d at 248 (Spatt, J.) (stating that an EEOC complaint cannot serve as a substitute, and even if it could, it was filed long after the required ninety days); *Patterson v. City of New York,* No. 97–CV–7159, 2000 WL 547020, at *3 (S.D.N.Y. May 4, 2000) ("Courts have rejected the proposition that an EEOC complaint may be construed as a notice of claim.") (citing *Baker v. Monroe,* 47 F. Supp. 2d 371, 374 (W.D.N.Y. 1999) (citing *McNeil v. Aguilos,* 831 F. Supp. 1079, 1085 (S.D.N.Y. 1993))); *Wrenn v. New York City Health Hospitals Corporation,* 104 F.R.D. 553, 557 (S.D.N.Y. 1985) ("[§] 50–e contains specific provisions as to the form of the notice and manner of service" and thus, an "EEOC charge . . . does not satisfy the statutory requirements for" filing a notice of claim); *see also Olsen v. Cnty. of Nassau,* No. 05–CV–3623, 2008 WL 4838705, at *2 (E.D.N.Y. Nov. 4, 2008) (holding that neither actual notice nor an EEO complaint are sufficient substitutes for a notice of claim); *Drees v. County of Suffolk,* No. 06–CV–3298, 2007 WL 1875623, at *14–15 (E.D.N.Y. June 27, 2007) (holding that actual notice is only relevant where the plaintiff petitions the court to allow for late notice); *Oshinsky v. New York City Housing Authority,* No. 98–CV–5467, 2000 WL 218395 at *14 n.5 (S.D.N.Y. Feb. 23, 2000) (same).

Accordingly, the Court finds that the Plaintiff failed to file a notice of claim as required under New York State Law, and therefore the Defendants' motion for summary judgment dismissing the Plaintiff's NYSHRL claims is granted.

## III.  CONCLUSION

The Defendants' motion pursuant to Fed. R. Civ. P. 56 for summary judgment is accordingly granted in part and denied in part.  It is granted to the extent that all of the Plaintiff's claims made under the NYSHRL and Section 1983 are dismissed.  Therefore, all of the causes of action against the individual Defendants are dismissed.  It is denied to the extent that questions of fact remain as to the Plaintiff's Title VII retaliation claim against the County Defendants, which is his sole remaining cause of action.

It is **SO ORDERED:**

Dated: Central Islip, New York

November 19, 2016                    _____ */s/ Arthur D. Spatt* _____

ARTHUR D. SPATT

United States District Judge