```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH A. VOLKER,

                        Plaintiff,                              MEMORANDUM OF
                                                                DECISION & ORDER
            -against-                                           2:16-cv-04805 (ADS)(SIL)

COUNTY OF NASSAU, NASSAU COUNTY
SHERIFF'S DEPARTMENT, ACTING
SHERIFF MICHAEL A. SPOSATO, in his
official and individual capacity, DEPUTY
COUNTY ATTORNEY and GENERAL
COUNSEL ELIZABETH LOCONSOLO, in her
official and individual capacity, MARY
ELISABETH OSTERMANN, in her official and
individual capacity, LIEUTENANT MICHAEL
GOLIO, in his official and individual capacity,

                        Defendants.
----------------------------------------------------------X
```
FILED
CLERK
4:28 pm, Nov 13, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

**Law Offices of Frederick K. Brewington**
*Attorneys for the Plaintiff*
556 Peninsula Boulevard
Hempstead, NY 11550
      By:    Frederick K. Brewington, Esq., Of Counsel

**Bee Ready Fishbein Hatter & Donovan, LLP**
*Attorneys for the Defendants*
170 Old Country Road Mineola, NY 11501
      By:    Michael P. Siravo, Esq.,
                Andrew K. Preston, Esq.,
                Deanna D. Panico, Esq.,
                Stephen Louis Martir, Esq., Of Counsel

**SPATT, District Judge**:

      This case is scheduled for trial regarding the claim that the Defendants retaliated against the Plaintiff for making complaints about racial discrimination by the Nassau County Sherriff's

Department ("NCSD") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

Presently before the Court is a motion *in limine*, pursuant to Federal Rules of Evidence ("Fed. R. Evid." or "Rules") 401 and 403, by the Defendants seeking an order to bar the introduction of evidence regarding a 1992 litigation brought against Nassau County by an organization of black law enforcement officers known as the Brothers of the Shield. For the following reasons, the Court grants the Defendants' motion, in part, and denies the motion, in part.

## I. BACKGROUND.

### A. THE RELEVANT FACTS.

The Plaintiff was hired by the NCSD in September 2007 as an Affirmative Action Specialist III ("AAS"). NCSD is an administrative arm of the County of Nassau, and one of its functions is overseeing the Nassau County Correctional Center. In relevant part, the Complaint alleged that the Defendants engaged in a policy or practice of systematically depriving African Americans of their constitutional rights and retaliated against him for opposing those practices and carrying out his job duties as an AAS. The retaliation claims alleged that the Plaintiff was suspended, lost vacation days, lost pay, and was terminated for submitting an annual report complaining about the lack of affirmative action at the NCSD and that discrimination investigations were being stymied.

On November 19, 2016, the Court granted the Defendants' motion for summary judgment and dismissed all of the Plaintiff's claims except for his Title VII retaliation claim. As to that claim, the Court found that his submission of the annual report constituted a protected activity to the extent that it opposed the Defendants' allegedly discriminatory practices, but not with respect to the portions of the annual report regarding the lack of affirmative action at NCSD. Regarding the

latter discussions, the Court stated that "opposing an employer's failure to engage in affirmative action is nevertheless unprotected under the statute," so that "the fact that the Plaintiff complained of the affirmative action policies of the NCSD, cannot by itself constitute an unlawful employment practice within the language of [Title VII]." ECF 78 at 17–18 (citing *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680–81 (2d Cir. 2016); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988)).

**B. THE BROTHERS OF THE SHIELD LITIGATION.**

In 1992, the Brothers of the Shield, and several of its members who were employed within the NCSD, filed a federal lawsuit against Nassau County alleging violations of 42 U.S.C. §§ 1981 and 1983 and New York Executive Law § 296. The action alleged that Nassau County denied black employees within the Sheriff's Department job opportunities and promotions, and that Nassau County more severely punished black employees within the Sheriff's Department.

In 1998, as part of the settlement of the litigation, Nassau County entered into a consent order with the Brothers of the Shield. ECF 110-3, Ex. I (hereinafter the "Consent Order"). Relevant here, the Consent Order called for the Sheriff to "petition the Nassau County Civil Service Commission to create a non-competitive position known as Special Assistant to the Sheriff for Affirmative Action.'" *Id.* ¶ 3. According to the Consent Order, "The Special Assistant will report to a Deputy Undersheriff and his/her duties will include investigation of bias incidents, recommendations concerning such incidents, recruitment and community outreach, assistance in the preparation and teaching of cultural diversity and fair employment practices training programs and such other duties and responsibilities as may be determined by the Sheriff or Deputy Undersheriff." *Id.*

## II. DISCUSSION.

### A. THE STANDARD ON MOTIONS *IN LIMINE*.

"The purpose of a motion in limine is to facilitate an efficient trial 'by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Pavone v. Puglisi*, No. 08-cv-2389, 2013 WL 245745, at *1 (S.D.N.Y. Jan. 23, 2013) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citation omitted). "The Federal Rules of Evidence ... provide that '[i]rrelevant evidence is not admissible' and define 'relevant evidence' as that 'having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Romanelli v. Long Island R. Co.*, 898 F. Supp. 2d 626, 629 (S.D.N.Y. 2012) (quoting Fed. R. Evid. 401, 402). However, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

### B. APPLICATION TO THE FACTS.

The Defendants argue that neither the Brothers of the Shield litigation nor the Consent Order have any bearing on the issues to be tried in this case. Thus, they believe the Court should exclude the evidence as irrelevant. Also, they assert that the probative value of any reference to those incidents is substantially outweighed by the possible prejudice to the Defendants and risks of confusing and misleading the jury. The Court agrees that the facts underlying the Brothers of the Shield litigation are irrelevant to this case and that any reference thereto should be prohibited.

However, the Court finds that the Consent Order possesses some relevance and may be introduced, with limitations.

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) he was engaged in a protected activity under Title VII; (2) the defendant was aware of the plaintiff's participation in the protected activity; (3) the employer took an adverse action against the plaintiff based upon his activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 608 (2d Cir. 2006); *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).

In the Court's view, the Brothers of the Shield lawsuit would not tend to establish any facts relevant to those elements. The only question litigated in a retaliation action is an employer's response to complaints of discrimination, not whether those complaints have merit. *See La Grande v. DeCrescente Distrib. Co.*, 370 Fed.Appx. 206, 212 (2d Cir.2010) ("It is well-established that a 'plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir.2002)).

The Court dismissed any claim that could potentially hold the Defendants liable for acts of discrimination. As a result, it is hard to discern what would be the probative value, if any, of introducing to the jury allegedly discriminatory acts that occurred over a decade before the Plaintiff's tenure at the NCSD. *See Dodson v. CBS Broad. Inc.*, 423 F. Supp. 2d 331,334 (S.D.N.Y. 2006) ("[T]he 'limited probative value of this evidence,'[] '[was] substantially outweighed by the burden that the admission of this evidence would place on [defendant] to explain the circumstances at issue in [the EEOC's lawsuit and its settlement], by the waste of time that would accompany such

5

explanations, and by the danger that admission of this evidence will create unfair prejudice against [defendant]."); *Martin v. Reno*, 2000 WL 1863765, at *4 (S.D.N.Y. Dec. 19, 2000) ("Such testimony [was] entirely irrelevant to [the plaintiff's] claims, and would merely protract the trial by taking the testimony too far afield from [the plaintiff's] actual claims. Thus, plaintiff [was] precluded from submitting any evidence about claims of discrimination other than his own.").

In addition, reference to the Brothers of the Shield lawsuit has the potential to be highly prejudicial to the Defendants. The Plaintiff appears to intend to use the lawsuit to show that NCSD was predisposed to retaliate against efforts to curb discrimination due to its apparent history of racism. *See* ECF 113 at 6 ("Clearly, Defendants County and NCSD did not proactively choose to embrace racial diversity in the workforce, but rather were forced to agree to implement such programs, or face the possible consequences of losing the federal litigation instituted by the 'Brothers of the Shield.'"). Introducing evidence for that purpose directly contradicts Rule 404's prohibition against propensity evidence. *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

The Plaintiff's contrary justifications for referencing the Brothers of the Shield lawsuit are not persuasive.

First, the Plaintiff contends that the lawsuit is admissible under Rules 607 and 608 because the disciplinary history and/or litigation history of witnesses is relevant to those witnesses credibility. However, those rules permit the introduction of evidence to interrogate the witness's character for truthfulness. Past complaints of discrimination, without any accompanying findings or admissions of wrongdoing, do not possess a sufficiently direct connection to a witness's credibility or character for truthfulness. *Cf. United States v. Teron*, 478 F. App'x 683, 685 (2d Cir.

6

2012) (affirming exclusion of cross-examination of a police sergeant regarding a civilian complaint review board's determination "regarding a complaint, unrelated to the present case, that Clements had engaged in an improper search"); *United States v. Price*, 374 F. App'x 189, 192 (2d Cir. 2010) ("In light of the fact that the civil case against Tsou settled without any finding by a court that he had committed wrongdoing, the district court did not abuse its discretion in concluding that cross-examination on this point risked unduly prejudicing and confusing the jury.").

Second, the Plaintiff argues that the Defendants' disciplinary records, complaints and adjudicated court cases are admissible pursuant to Rule 404(b). But evidence of past wrongdoing only evades the preclusion of propensity evidence if it is "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). As previously explained, there is no apparent reason why the facts of a decade-plus old discrimination action would tend to establish a fact relevant to the Plaintiff's present retaliation claims, making invocation of this exception inappropriate. The cases cited by the Plaintiff as examples are inapposite, because they involved claims which required the Plaintiff to show a "policy or custom" of unlawful behavior in violation of Section 1983. *See Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990) (admitting evidence of past wrongdoings to establish a claim under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). No such requirement exists in this case. Title VII only focuses on the discrete instances of retaliation allegedly underlying a plaintiff's claims.

As to the Consent Order, according to the Plaintiff, "[t]he Consent Order in this matter is extremely relevant as it goes to the genuine issue of material fact in dispute regarding whether Plaintiff's position as AAASIII was a result of said Consent Order and the Brothers of the Shied

7

litigation." ECF 113 at 4. Further, the Plaintiff believes "both the Consent Order and the Brother of the Shield litigation provide important context and background to the requirement of an AASIII position at Defendant NCSD and the responsibilities under the Consent Order." *Id.*

At first glance, it is not immediately apparent why the fact that Nassau County established the Plaintiff's position pursuant to the Consent Order would be relevant to whether the Defendants retaliated against him. The Court has already ruled that the Plaintiff's complaints regarding NCSD's failure to implement affirmative action programs consistent with the Consent Order is not a cognizable protected activity under Title VII. ECF 78 at 17–18. The Plaintiff survived summary judgment because his complaints raised NSCD's efforts to stymy investigations into racial discrimination, which would be illegal under Title VII notwithstanding the existence of the Consent Order. Put another way, it would be actionable to retaliate against the Plaintiff for making complaints of racial discrimination whether or not the Consent Order obligated him to make those complaints.

Nevertheless, the Court concurs with the Plaintiff that the Consent Order is inseparable from the relevant facts in this case, so that it would be inappropriate to totally preclude its introduction. The inquiry into whether a plaintiff engaged in a "protected activity" asks whether that plaintiff showed a "good faith, reasonable belief that the conduct was unlawful." *Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 228 (E.D.N.Y. 2010). While opposing an employer's failure to engage in affirmative action cannot "by itself" constitute a protected activity, *Manoharan*, 842 F.2d at 594, that does not mean those complaints are wholly irrelevant. *See Keaton v. Connecticut Dep't of Rehab. Servs.*, No. 16-cv-1810, 2018 WL 1245728, at *7 (D. Conn. Mar. 9, 2018) ("Unlike the plaintiff in *Cooper*, however, Keaton does not allege merely that she complained about potential, future discrimination against minority employees."); *Moore v. Dep't*

8

*of Correction*, No. 13-cv-01160, 2017 WL 2413690, at *9 (D. Conn. June 2, 2017) (denying defendant's motion for summary judgment where "plaintiff engaged in [additional] 'protected activities' beyond merely working in the affirmative action unit").

The Plaintiff accompanied his complaints about the NCSD's failure to implement affirmative action programs in violation of the Consent Order with complaints of overt racial discrimination. Consequently, the violations of the Consent Order at least peripherally relate to the reasonableness of the Plaintiff's belief that the Defendants' conduct was unlawful. Indeed, the Plaintiff references those violations on the same page of the annual report that he discusses the other complaints. ECF 69-7, Ex. H at 9. It is unclear then how the Plaintiff could establish he engaged in a protected activity at trial without making at least some mention of the Consent Order.

Moreover, the Consent Order might be probative to establishing the cause of the adverse employment actions; here, a suspension, lost vacation days, lost pay, and the Plaintiff's ultimate termination. At trial, the Defendants will attempt to justify those actions based on a number of disciplinary infractions issued through Notice of Personnel Actions ("NOPAs") after the Plaintiff complained that discrimination investigations were being stymied in the annual report. The Plaintiff alleges that the NOPAs he received: (1) were issued by people who had no authority to discipline him under the Consent Order; and (2) were issued for taking actions required by the Consent Order. ECF 113 at 7. If true, these facts would support the conclusion that the disciplinary infractions cited in the NOPAs were pretext for retaliating against the Plaintiff for the contents of the annual report. The Defendants disagree with the Plaintiff's characterization of the interaction between the Consent Order and his job duties. The determination of who has the correct interpretation should be left to the jury. It is not something appropriately decided on a motion *in limine*.

At the same time, this conclusion does not mean that the Plaintiff should be permitted unfettered introduction of the Consent Order at trial. The Consent Order possesses the same potential to act as propensity evidence as references to the underlying facts of the lawsuit. The Consent Order was not an admission or finding of guilt by or against the County. *See* Consent Order ¶ 14. It would be highly prejudicial for the Plaintiff to introduce the document as evidence of prior wrongdoing or to establish that the Defendants were predisposed to retaliate against the Plaintiff. Therefore, the Court will establish parameters around which the Plaintiff may use the Consent Order. The Plaintiff may cite the Consent Order to attempt to establish the scope of his job duties and to attack the credibility of defense witnesses regarding the NOPAs. The Plaintiff may not reference the content of the underlying lawsuit that resulted in the Consent Order or allege that the Consent Order serves as evidence of past wrongdoing by the NCSD.

Accordingly, the Court grants the Defendants' motion *in limine* with respect to the Brothers of the Shield litigation and denies the motion with respect to the Consent Order.

### III. CONCLUSION.

For the foregoing reasons, the Court grants, in part, and denies, in part, the Defendants' motion *in limine*. Accordingly, it is:

**ORDERED** that the Plaintiff is prohibited from introducing evidence at trial regarding the underlying facts and circumstances surrounding the Brothers of the Shield litigation and the Consent Order;

**ORDERED** that the Plaintiff may introduce the Consent Order for the sole purpose of establishing the scope of the Plaintiff's job duties and attacking the credibility of witnesses testifying regarding the Plaintiff's disciplinary infractions;

**ORDERED** that the Plaintiff may not allege that the Consent Order serves as evidence of past wrong doing by the Defendants.

Dated: Central Islip, New York
November 13, 2019

   /s/ Arthur D. Spatt
ARTHUR D. SPATT
United States District Judge